# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

SAIDRICK PEWITTE,          )
                                   )
      **Plaintiff,**         )
                                   )
**v.**                             )      **Case No. 3:17-cv-00822**
                                   )      **Judge Aleta A. Trauger**
**CYNTHIA PRATT, R. COBLE, M.D.,**    )
**JOE SCHWEITZER, f/n/u SMITH,**     )
                                   )
      **Defendants.**       )

## MEMORANDUM and ORDER

Before the court is the Objection to Report and Recommendation of Magistrate Judge on Defendants' Motion for Summary Judgment (Doc. No. 64), filed by defendants Cynthia Pratt, Robert Coble, M.D., Joseph Schweitzer, and Samantha Smith. For the reasons discussed herein, the court will overrule the defendants' Objection, accept the magistrate judge's recommendations in their entirety (Doc. No. 62), and deny the defendants' Motion for Summary Judgment (Doc. No. 49).

## I.      STANDARD OF REVIEW

The standard of review applicable to a party's objections to a magistrate judge's ruling depends upon whether the objections pertain to a dispositive or non-dispositive matter. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). Motions for summary judgment are among the dispositive motions listed in § 636(b)(1)(A). When a party files objections to a magistrate judge's report and recommendation regarding a dispositive motion, the district court must review *de novo* any portion of the report and recommendation to which objections are "properly" lodged. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(B) & (C). After review, the

district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

An objection is "properly" made if it is sufficiently specific to "enable[] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Special Learning, Inc. v. Step by Step Acad., Inc.*, 751 F. App'x 816, 819 (6th Cir. 2018) (citations omitted). In addition, "[a]bsent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Harris v. Ocwen Loan Servicing, LLC*, No. 17-5399, 2017 WL 8791308, at *2 (6th Cir. Nov. 22, 2017) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)). "[T]he Magistrates Act was not intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.'" *Bauman v. City of Cleveland*, No. 1:04-CV-1757, 2015 WL 893285, at *8 (N.D. Ohio Mar. 3, 2015) (internal quotation marks and citations omitted)).

By the same token, "[a]n 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also Janssen v. Comm'r of Soc. Sec.*, No. 14-CV-12453, 2015 WL 1737555, at *2 (E.D. Mich. Apr. 16, 2015) ("A non-specific objection, or one that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge and results[] in a duplication of effort on the part of the district court[.]"

(citation omitted)).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The court adopts in its entirety the summary of the evidence set forth in the "Factual Background" section of the R&R. (Doc. No. 62, at 2–10.) Although the court will address specific facts as necessary for resolution of the defendants' Objections, the discussion herein presumes familiarity with the R&R.

Plaintiff Saidrick Pewitte is a prisoner incarcerated at the Turner Trousdale Correctional Center ("TTCC"). While Pewitte was incarcerated at TTCC, CoreCivic contracted with Correct Care Solutions ("CCS"), also a private company, to provide medical care to those housed in the facility. Defendants Smith, Coble, Schweitzer, and Pratt were employed by CCS to work at TTCC.

Pewitte initiated this lawsuit in May 2017 by filing a Complaint under 42 U.S.C. § 1983. He was permitted to proceed *in forma pauperis*, and, after he filed a verified Amended Complaint, the court performed a screening in accordance with 28 U.S.C. § 1915(e)(2) and concluded that he stated colorable claims against defendants Coble and Smith, in their individual capacities, and against defendants Pratt and Schweitzer, in both their individual and official capacities, for deliberate indifference to the plaintiff's serious medical needs.

Following entry of a scheduling order, the parties engaged in a period of discovery. Thereafter, the defendants filed their Motion for Summary Judgment, accompanied by a Memorandum of Law and Statement of Undisputed Material Facts and various affidavits and exhibits, on December 9, 2019. (Doc. Nos. 49–51.) As summarized by the magistrate judge,

> The defendants argue that they were not deliberately indifferent to Pewitte's serious medical needs and are entitled to summary judgment on all of Pewitte's individual capacity claims because Pewitte never complained about or showed his leg injuries to Smith and Coble and because Schweitzer and Pratt were not involved in approving or obtaining prescription medications at TTCC. The

defendants further argue that they are entitled to summary judgment on Pewitte's official capacity claims because he cannot show a violation of his constitutional rights and, in the alternative, cannot show that CCS policies caused any such violation.

(Doc. No. 62, at 11–12 (internal citations to the record omitted).) More specifically, the defendants argue that Smith and Coble cannot be liable for deliberate indifference to the plaintiff's serious medical needs, because the undisputed facts show that they actually provided care and that the plaintiff is simply quibbling with the adequacy of the care provided. In support of this argument, the defendants assert that the record does not support the plaintiff's claim that he suffered from painfully infected leg wounds or that Smith or Coble was deliberately indifferent to this condition. (Doc. No. 50, at 16, 17.) They argue that Pratt and Schweitzer cannot be individually liable, because the undisputed facts show that these defendants were not responsible for ordering medication, approving medication orders, procuring medication, determining staffing numbers, creating policies or procedures for periods of prison lock-down or the distribution of medications and the provision of medical care during lock-downs. Finally, the defendants argue that Pratt and Schweitzer cannot be liable in their official capacity, because, first, the plaintiff fails to establish a violation of his constitutional rights, and second, the plaintiff cannot show that a prison policy was the moving force behind any alleged injury. (Doc. No. 50, at 18–19.)

The plaintiff filed an affidavit responding to the defendant's motion, to which he attached his own supporting evidence, including sick call requests, grievances, and letters he wrote asking for help regarding his medical treatment. (Doc. No. 53.) The magistrate judge construed this filing as the plaintiff's response in opposition to the motion for summary judgment. (Doc. No. 62, at 12.) The plaintiff did not file a response to the defendants' Statement of Undisputed Material Facts. The defendants filed a "Response to Plaintiff's Affidavit" (Doc. No. 54), which

the magistrate judge considered to be a reply brief, and the plaintiff filed a supplemental response, refuting arguments raised for the first time in the defendants' reply brief, in particular that his response was untimely and that the court could not consider the plaintiff's unsworn and uncertified exhibits.

The magistrate judge issued the R&R on May 6, 2020 (Doc. No. 62), finding, as threshold matters, that the plaintiff's response to the Motion for Summary Judgment was timely under the prison mailbox rule and that the plaintiff's unsworn and uncertified exhibits could be considered under Rule 56(e) of the Federal Rules of Civil Procedure. The magistrate judge also found that, while the plaintiff's failure to respond to the defendants' Statement of Undisputed Material Facts meant that the court would deem the facts set forth therein to be true for purposes of the Motion for Summary Judgment, that did not automatically mean the exclusion of the plaintiff's evidentiary material or that the defendants were entitled to summary judgment.

Substantively, the magistrate judge also found that material factual disputes preclude summary judgment in favor of any of the defendants. To reach that conclusion, the magistrate judge conducted a very thorough analysis of the evidence in the record and set forth a detailed statement of facts. She concluded that, while the defendants have adduced competent proof in support of their argument as to why they were entitled to summary judgment, the plaintiff has succeeded in demonstrating a material factual dispute as to each set of facts upon which the defendants rely.

Specifically regarding Smith, the magistrate judge found that the plaintiff's statements in the verified Amended Complaint create a material factual dispute as to whether Smith provided the plaintiff with adequate quantities of his "keep-on-person" medications and as to whether he

had pain and swelling in his legs when he saw Smith on July 25, 2016. (Doc. No. 62, at 24–25.) The magistrate judge stated:

> The record evidence, construed in the light most favorable to Pewitte, supports Pewitte's assertion that he suffered from chronic hypertension and diabetes, that he was prescribed Furosemide to treat fluid retention and swelling, and that he had not received any Furosemide, potassium chloride, or vitamin B6 for eleven days before he saw Smith on July 25, 2016. Based on this record, it cannot be said that Pewitte's testimony about experiencing severe swelling in his legs and resulting injuries and showing those injuries to Smith is "demonstrably false or totally implausible." The Court therefore finds that Pewitte has pointed to more than a mere scintilla of evidence supporting his position that Smith was aware of and failed to treat injuries on Pewitte's legs.

(*Id.* at 26 (quoting *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020)).) Because Pewitte's account of his July 25, 2016 clinic visit conflicts with Smith's, and the record evidence does not definitely support one version over the other, the court found that Smith is not entitled to summary judgment.

As for the claims against Coble, the plaintiff similarly alleges that this defendant was deliberately indifferent to his serious medical needs because he was aware of, but failed to treat, the plaintiff's leg wounds. The magistrate judge again found a material factual dispute as to whether, when the plaintiff saw Coble on January 3, 2017, he complained about aggravated edema with swelling in his lower legs and painful sores. The magistrate judge pointed to other evidence in the record, besides the plaintiff's assertions, that support this claim. (Doc. No. 50, at 27–28.) In addition, she added, "Coble has not asserted that he physically examined Pewitte during this visit, and Pewitte states that he did not." (*Id.* at 28.) Further, according to Pewitte, "even after he complained to Coble about aggravated edema and extreme swelling in his legs, Coble 'remained seated and did not perform a physical examination[,]' although Coble 'did "look at" the large and painful clusters of burst boils and open ulcers on [Pewitte's] legs . . . .'" (Doc. No. 62, at 29 (quoting Doc. No. 11, ¶¶ 123, 124.) Finding that the plaintiff had "pointed to

specific, nonconclusory facts in the summary judgment record demonstrating that Coble was aware of severe injuries to Pewitte's legs and failed to treat them," the magistrate judge found that a material factual dispute precludes summary judgment on the plaintiff's deliberate indifference claim. (Doc. No. 62, at 29.)

As for Schweitzer and Pratt, the magistrate judge noted that these defendants argue that they are entitled to summary judgment on the individual capacity claims, because "only providers ordered medications. Health Services Administrators did not order medication, nor were they involved in the approval of medication orders or the procurement of medications that were ordered." (Doc. No. 62, at 31 (quoting Doc. No. 51 ¶ 33).) The magistrate judge further noted, however, that Schweitzer and Pratt state in their affidavits that they were responsible for notifying medical providers who did procure medication if prescribed medications were not received. Thus, by their own description of their role, they were engaged "in ensuring inmates received prescribed medications for inmates that is directly relevant to Pewitte's claims." (Doc. No. 62, at 32.) For his part, the plaintiff attests that he repeatedly complained about not receiving his keep-on-person medications, and this testimony is supported by a letter in the record addressed to Pratt. Pratt's affidavit does not address Pewitte's letter, and Schweitzer's affidavit does not address the plaintiff's sworn statement that, when Pewitte asked Schweitzer personally why he was not receiving his keep-on-person medications, Schweitzer responded that his team was understaffed and overworked. (*See* Doc. No. 11 ¶ 54.) In sum, viewing the evidence in the record in the light most favorable to the plaintiff, the magistrate judge found a material factual dispute as to whether "Schweitzer and Pratt had some relevant responsibility to notify CCS medical providers when TTCC inmates did not receive prescription medications and, therefore, could have acted with deliberate indifference to Pewitte's serious medical needs regarding his

keep-on-person medications." (Doc. No. 62, at 32.) The R&R recommends denying summary judgment to Schweitzer and Pratt on the individual capacity claims on that basis.

Finally, regarding the official capacity claims, the magistrate judge first found that the plaintiff asserts a federally protected right—the denial of adequate medical care in violation of his rights under the Eighth Amendment. The R&R also concluded that Pewitte adequately alleges that CCS had "a custom or practice of (1) failing to maintain adequate staffing levels to ensure that inmates had access to keep-on-person medications and glucose monitoring during lockdowns, and (2) failing to transmit keep-on-person medication orders and ignoring inmates' resulting complaints." (Doc. No. 62, at 35 (citing Doc. No. 11).) Although the defendants present evidence to support their argument that the plaintiff could not show that a CCS policy led to a violation of his constitutional rights, the magistrate judge found the evidence presented by the defendants does not actually address or refute the plaintiff's allegations that CCS had an unwritten policy or custom of condoning insufficient clinic staffing levels to provide inmates with access to keep-on-person medications and glucose monitoring during lock-downs or repeated deprivations of prescribed keep-on-person medications even when the facility was not on lock-down. (Doc. No. 62, at 37.) More generally, the magistrate judge noted that the defendants have not "addressed the specific legal standards governing inaction theory claims" or "analyzed the relevant factual and legal issues specific to Pewitte's particular claims." (*Id.*) The magistrate judge, therefore, recommends denying summary judgment on the official capacity claim as well.

## III.    OBJECTIONS TO THE R&R

The defendants filed their timely Objections, asserting that, even taking as true the plaintiff's factual allegations, the plaintiff cannot show that the defendants were deliberately

indifferent to his serious medical needs. The defendants argue that the plaintiff's allegations, at most, demonstrate mere negligence rather than deliberate indifference.

More specifically, the defendants claim that there is no dispute that Smith saw Pewitte on July 25, 2016, physically evaluated him, acknowledged his medical history, and completed a treatment plan. Accordingly, they argue that the plaintiff cannot show that Smith intentionally denied him access to medical care. (Doc. No. 65, at 3.)

Regarding Coble, the defendants argue that the magistrate judge's assertions that "Coble has not asserted that he physically examined Pewitte during [the January 3, 2017] visit" and that the "record supports findings . . . that Coble did not perform an independent physical examination of Pewitte during [the January 3, 2017] visit" are incorrect. (Doc. No. 65, at 4 (quoting Doc. No. 62, at 29).) Rather, the defendants argue, Coble's testimony and the record evidence "confirm[ that] Coble saw Pewitte on January 3, 2017" and "made treatment decisions for Pewitte during that visit." (*Id.* (citing Coble Aff., Doc. No. 49-7 ¶ 5, and CCS000028).) Thus, the defendants insist, the plaintiff has not created a material factual dispute as to whether Coble denied Pewitte access to medical care or was deliberately indifferent to the plaintiff's serious medical needs.

The defendants object to the denial of summary judgment on the individual capacity claims against Schweitzer and Pratt on the basis that their sworn testimony establishes that "they do not process physicians' medication orders, and they do not transmit medication orders to pharmaceutical providers," and "[t]he Plaintiff has not identified any evidence contrary to that testimony." (Doc. No. 65, at 5.) As to the official capacity claims, the defendants object that the "record evidence . . . establishes that CCS employees did not handle security, lockdowns, or access to inmates. Because CCS employees did not have control over access to inmates during

lockdowns, it is logistically impossible for CCS to have a policy that impacts inmate access to medications and glucose monitoring during lockdowns." (Doc. No. 65, at 6 (footnote reference omitted).)

## IV.    ANALYSIS

Generally, the defendants' objections do "nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarize[] what has been presented before," and, as such, are not proper objections. *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). They do not actually point to any error on the part of the magistrate judge. The court has nonetheless reviewed *de novo* the objections presented by the defendants and finds that they are without merit.

### A.    Smith

As set forth above, the magistrate judge specifically found that the plaintiff's statements in the verified Amended Complaint create a material factual dispute as to whether Smith provided the plaintiff with adequate quantities of his "keep-on-person" medications and as to whether he had pain and swelling in his legs when he saw Smith on July 25, 2016 that she ignored. (Doc. No. 62, at 24–25.) The defendants do not even address these allegations or the magistrate judge's conclusion that the plaintiff's allegations and other evidence create a material factual dispute as to whether Smith acted with deliberate indifference to the plaintiff's serious medical needs. Having considered this issue *de novo*, the court agrees with the magistrate judge that material factual disputes preclude summary judgment in favor of Smith.

### B.    Coble

As set forth above, the defendants claim that the magistrate judge was incorrect in stating that Coble has not asserted that he physically examined Pewitte during the January 3, 2017 visit. The court has conducted a *de novo* review of the record and finds no error. Pewitte, indeed,

acknowledges that he had a "visit" with Coble on January 3, 2017, but he asserts in the verified Amended Complaint that Coble "remained seated and did not perform a physical evaluation" and that, although Coble "look[ed] at" the plaintiff's swollen legs and the open sores, he did not make any significant changes to the plaintiff's medication or order treatment for the boils and open sores. (Doc. No. 11 ¶ 124.) Coble states in his Affidavit that he "saw" the plaintiff on January 3, 2017 for a blood sugar check, prescribed Naproxen for 180 days, a face mask for CPAP, and placed the plaintiff on a therapeutic diet for 90 days. (Doc. No. 49-7 ¶ 5.) He does not state that he performed a physical examination. Moreover, the defendants do not address or even acknowledge the magistrate judge's finding that the plaintiff has established the existence of a material factual dispute as to whether Coble was aware of, and failed to treat, the injuries on Pewitte's legs.

The court, having conducted a *de novo* review of this objection, finds that there is a material factual dispute on this issue as well and that defendant Coble is not entitled to summary judgment. The court will accept in their entirety the magistrate judge's findings and conclusions in this regard.

### C. Schweitzer and Pratt – Individual Capacity Claims

These defendants insist that they are entitled to summary judgment because their sworn testimony establishes that "they do not process physicians' medication orders, and they do not transmit medication orders to pharmaceutical providers," and "[t]he Plaintiff has not identified any evidence contrary to that testimony." (Doc. No. 65, at 5.) The magistrate judge acknowledged Schweitzer and Pratt's arguments and evidence regarding this issue, stating:

> Schweitzer and Pratt argue that they are entitled to summary judgment on Pewitte's individual capacity claims against them because they assert in the defendants' statement of undisputed material fact that, at TTCC, only 'providers ordered medications. Health Services Administrators did not order medications,

nor were they involved in the approval of medication orders or the procurement of medications that were ordered[.]' The Court accepts this assertion as true for purposes of summary judgment.

(Doc. No. 62, at 30–31 (quoting Doc. No. 51 ¶ 33).) The magistrate judge also examined other evidence in the record, including the affidavit of Stephanie Ruckman, a CCS nurse practitioner employed at TTCC, who states that, "[a]t [TTCC], providers ordered medications. Health Services Administrators did not order medications, nor were they involved in the approval of medication orders or the procurement of medications that were ordered." (Doc. No. 49-1 ¶ 35) Schweitzer's and Pratt's affidavits similarly state that, "[a]s Health Services Administrator[s], [we] did not prescribe medications, nor did [we] approve or transmit medication orders. [We] also did not facilitate the stocking of medications[.]" (Doc. No. 49-3 ¶ 19; Doc. No. 49-4 ¶ 19.)

Nonetheless, the magistrate judge found that this evidence is not sufficient to completely rebut the plaintiff's claims and the evidence he offers to support them:

> Schweitzer's and Pratt's affidavits also state that it was their role to notify the medical providers who did procure medications if prescribed medications were not received; Schweitzer and Pratt state that, "[i]f an inmate complained about not receiving medication, [we] reviewed the chart to confirm whether the medication had been received and/or ordered, and if additional actions were needed, [we] would notify CCS medical providers[.]"Thus, even taking as true that Schweitzer and Pratt "did not order medications, nor were they involved in the approval of medication orders or the procurement of medications that were ordered," the fact that they "would notify medical providers" when an inmate's medication had not been received describes a role in ensuring inmates received prescribed medications for inmates that is directly relevant to Pewitte's claims.

> Pewitte states that he repeatedly complained about not receiving his keep-on-person medications, and his testimony is supported by a letter in the record addressed to Pratt in which Pewitte complains about his "mandated medication(s) . . . not being ordered, or not [being made] available for month[]s . . . ." Pratt's affidavit does not address Pewitte's letter. Moreover, Schweitzer's affidavit does not address Pewitte's sworn statement that, when Pewitte asked Schweitzer why he was not receiving his keep-on-person medications, Schweitzer replied that "[h]e did not have anybody to fill the orders[ ] because" his team was "understaffed" and his "people [were] overworked[.]" This response, which is uncontroverted for purposes of summary judgment, further suggests that health

services administrators had a relevant role to play when inmates complained about not receiving medications.

The Court finds that the record evidence, construed in the light most favorable to Pewitte, supports a finding that Schweitzer and Pratt had some relevant responsibility to notify CCS medical providers when TTCC inmates did not receive prescription medications and, therefore, could have acted with deliberate indifference to Pewitte's serious medical needs regarding his keep-on-person medications.

(Doc. No. 62, at 31–32 (internal record citations omitted).)

The court, having reviewed this issue and the underlying evidentiary material *de novo*, finds that the magistrate judge did not err in concluding that material factual disputes preclude summary judgment in favor of these defendants in their individual capacity.

### D.     Official Capacity Claims Against Schweitzer and Pratt

Pewitte's official capacity claims are premised upon allegations that Schweitzer and Pratt, in their official capacities as CCS employees, violated his Eighth Amendment rights by adopting a custom or practice of (1) failing to maintain adequate staffing levels to ensure that inmates had access to keep-on-person medications and glucose monitoring during lockdowns, and (2) failing to transmit keep-on-person medication orders and ignoring inmates' resulting complaints. (*See* Doc. No. 11 ¶¶ 158, 168, 172–74; *see also* Doc. No. 65, at 4 (summarizing the plaintiff's official-capacity claims).)

As set forth above, Schweitzer and Pratt argue that the official-capacity claims fail, first, because there is no material factual dispute as to whether they failed to transmit orders for keep-on-person medications. The court has already rejected that argument, *supra*. These defendants also insist that the evidence establishes that "CCS employees did not handle security, lockdowns, or access to inmates" (Doc. No. 66, at 6 (citing 49-3 ¶ 4; Doc. No. 49-4 ¶ 4)) and that,

consequently, it is "logically impossible for CCS to have a policy that impacts inmate access to medications and glucose monitoring during lockdowns." (*Id.*)

The magistrate judge addressed this argument as well but noted that the defendants' factual assertions do not directly address the plaintiff's allegations that CCS had an unwritten policy, practice or custom of condoning a staffing level that was insufficient to provide inmates with adequate access to keep-on-person medications and glucose monitoring during lockdowns—or even when the facility was not locked down. More specifically, although the defendants allege that "[d]uring lock down periods, the practice was for nurses to come to the units for pill call and diabetic call" escorted by security staff (Doc. No. 51 ¶ 35), "they do not address Pewitte's claim that CCS maintained inadequate staffing levels to *implement* this practice." (Doc. No. 62, at 37.) In addition, although Schweitzer and Pratt insist that they were not personally involved in determining the staffing level, "it is CCS's action or inaction that is relevant." (*Id.*) The magistrate judge found that the defendants have not addressed the legal standards governing inaction claims or analyzed the relevant factual and legal issues specific to Pewitte's claims. She therefore concluded that the defendants are not entitled to summary judgment on the official capacity claims.

The defendants, again, have simply reiterated the arguments raised in their summary judgment briefing but have not shown that the magistrate judge erred in her consideration of the evidence or in applying the law to the undisputed facts. The objection to the denial of summary judgment on these claims, too, will be overruled.

## V.  CONCLUSION AND ORDER

Having conducted a *de novo* review of those portions of the R&R to which the defendants have properly objected, the court finds the Objection to be without merit. The Objection (Doc. No. 64) is **OVERRULED**, and the court **ACCEPTS** the magistrate judge's

findings and recommendations in their entirety. The defendant's Motion for Summary Judgment (Doc. No. 49) is **DENIED**.

The case is returned to the magistrate judge under the original referral Order for consideration of the plaintiff's pending Motion for Appointment of Counsel (Doc. No. 58).

An Order resetting the trial date will enter separately.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge